## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER M. MAUNZ | ) |
| 109 Ocracoke Lane | ) |
| Yorktown, VA 23693 | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC FANNING | ) |
| Secretary of the Air Force | ) |
| 1670 Air Force Pentagon | ) |
| Washington, D.C. 20330 | ) |
| | ) |
| *Defendant.* | ) |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

### (APA Review of the Air Force Board for Correction of Military Records)

### JURISDICTION AND VENUE

1.      This action seeks review of actions by the Air Force Board for Correction of

Military Records (AFBCMR).

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331.  Plaintiff raises claims under federal statutes and Army regulations.

3.      The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C.

§ 1552, *et seq.*, which provides for a service member to apply to the AFBCMR to correct errors

and injustices, and the APA, 5 U.S.C. § 701 *et seq.*, which enables a federal court to review and

reverse a decision of a Board for Correction of Military Records that is arbitrary, capricious,

unsupported by evidence or otherwise contrary to law.  5 U.S.C. § 706.

4.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5.      Venue lies pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1402(a)(2).

## PARTIES

6.      Plaintiff, Christopher M. Maunz, is a United States citizen who resides at the address stated in the caption.

7.      Defendant, Michael B. Donley, is SecAF and is a named defendant in his official capacity as the head of the Department of the Air Force (DAF). 10 U.S.C. § 8013.  DAF is an agency as defined by 5 U.S.C. § 701.  Thus, because SecAF is the officer with final authority over correction of records within DAF, he is a proper defendant in a claim pursuant to the APA.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On August 25, 2010 Plaintiff submitted an application to the AFBCMR requesting, asserting several discrete arguments and requesting various forms of relief.

9.      On December 23, 2011 the AFBCMR issued a final decision on Plaintiff's application.

10.      After a period of correspondence with AFBCMR personnel, on July 13, 2012, Plaintiff submitted a letter to the AFBCMR requesting relief.

11.      On May 16, 2013, in response to the July 13, 2012 letter, the AFBCMR issued a final decision on what it construed as Plaintiff's "request for reconsideration."

12.      Plaintiff has exhausted all administrative remedies available to him.

13.      Pursuant to 28 U.S.C. § 2401(a), this type of claim must be filed within six years after the claim first accrues.

14.      Plaintiff's claims accrued on the date when the AFBCMR issued a final decision

on Plaintiff's application.  The AFBCMR issued a final decision on Plaintiff's initial application

on December 23, 2011 and issued a reconsideration decision on May 16, 2013.

15.   "[T]he right to obtain judicial review of a Board of Corrections' decision under

the APA . . . accrues at the time of the final agency decision . . . rather than at the time when the

underlying discharge . . . occurred." *Lebrun v. England*, 212 F. Supp. 2d 5, 11 (D.D.C. 2002)

16.   Applications for reconsideration are within the statute of limitations if filed within

six years of the initial final decision.  *See Lewis v. Sec'y of the Navy*, 892 F. Supp. 2d 1, 6

(D.D.C. 2012).

17.   The AFBCMR issued a final decision on Plaintiff's initial application within the

last six years; likewise, the reconsideration application was filed and decided within six years of

the initial final decision.  This action, therefore, falls within the statute of limitations.

## FACTS

18.   Plaintiff enrolled as a cadet in the Air Force Reserve Officer Training Corps

(AFROTC) on September 6, 2005.

19.   On November 23, 2013, after being stopped by a police office in North Carolina,

Plaintiff was cited for speeding and possession of marijuana/drug paraphernalia.

20.   Known as the "72 hour rule," AFROTC policy states that cadets must report all

civilian involvements (e.g. involvement with civil law enforcement officials) to the detachment

within 72 hours after the involvement occurs.  AFROTCI 36-2011 para. 1.5.2.3.

21.   When a detachment commander discovers that a cadet has failure to report a

civilian involvement, commanders will initiate a disenrollment investigation or request a waiver.

*Id.* para. 1.5.6.8.

22.   Late reporting, when voluntary, is not considered a failure to report but results in

counseling. *Id.* para. 1.5.6.9.

23.     Despite knowing the seventy-two hour rule and asserting that he believed he needed to inform his superior officer of the civil involvement within 72 hours, his father, a retired Air Force colonel, a him to first clear the charges and then report the civil involvement. Plaintiff's father believed that under AFROTCI 36-2011 para. 1.5.6.9, if Plaintiff reported his involvement voluntarily, it would not constitute failure to report.  Plaintiff followed his father's advice and did not report the civil involvement within 72 hours.

24.     Due to court holidays and other delays beyond Plaintiff's control, he did not attend his official court hearing until December 31, 2009. At this time, the Assistant District Attorney dismissed the possession charges against Plaintiff and reduced the two other traffic counts against him to speeding and an unsafe traffic movement.

25.     On January 15, 2009, after the conclusion of the court proceedings Plaintiff notified his superior officer of the civil involvement.

26.     On February 2, 2009, Plaintiff's commander initiated a disenrollment action against Plaintiff.

27.     The investigating officer (IO) completed his investigation on February 11, 2009. The IO found that Plaintiff was aware of the 72-hour rule and decided to wait until after the court date to notify the detachment on January 15, 2009.

28.     The detachment commander subsequently disenrolled Plaintiff from the AFROTC program for "failure to maintain military retention standards," specifically for "show[ing] a lack [sic] of poor judgment when he deliberately failed to report his civil involvement within the required 72 hours to detachment personnel."

29.     Plaintiff was disenrolled on April 2, 2009.

30.    As a result of his disenrollment, the Air Force sought recoupment of ROTC scholarship money in the amount of $27,764.00.

31.    On August 5, 2010, Plaintiff submitted an application to the AFBCMR asserting a number of arguments and requesting, in pertinent part, that the Board stop all recoupment of his scholarship funds, reinstate him into the AFROTC program and the Air Force reserve, and grant relief for cause.

32.    Plaintiff argued, in pertinent part, that under AFROTC regulation, late reporting is not considered a failure to report and waivers should be considered in such cases.  Detachment commanders have waiver authority for non-criminal involvements and for minor misdemeanor criminal offenses.

33.    The AFBCMR forwarded Plaintiff's case to the Holm Center Judge Advocate's office (Holm Center/JA) for an advisory opinion.

34.    On September 17, 2010, Holm Center/JA issued an advisory opinion recommending denial of Plaintiff's application.  Holm Center/JA argued, in pertinent part, that an intentional delay in reporting, as opposed to late reporting due to oversight or accident, is considered a failure to report and a violation of policy.

35.    Plaintiff responded to the advisory opinion on October 25, 2010.

36.    About fourteen months later, on December 23, 2011, the AFBCMR issued its decision with the voting members unanimously recommending favorable relief.  Specifically, the AFBCMR recommended the following corrections:

    A.  Plaintiff's DD Form 785, Record of Disenrollment from Officer Candidate – Type Training, dated 2 April 2009, be removed from his record;

    B.  Plaintiff was not disenrolled from Air Force Officer Training Corps on 2 April

2009, but was continued in that program; that his Source of Commission is

(AFROTC) and all recoupment action associated with his disenrollment be

stopped;

C.  Appropriate actions be taken to affect his commission and promotion.

37.  In accordance with AFBCMR regulations, the Board forwarded its

recommendations to the Director of the Air Force Review Board Agency, the Secretary of the

Air Force's (SecAF) designee, for a final decision.  *See* 32 C.F.R. § 865.4(l)(1),(2).

38.  SecAF has discretionary authority to "direct such action as he or she deems

appropriate" and can accept or reject the AFBCMR's recommendations. *Id*. § 865.5(a).

39.  Acting as SecAF's designee, Director, AFRBA, approved and adopted the

AFBCMR's recommendations and directed the Air Force Chief of Staff to correct the

pertinent records of the Air Force in accord with the AFBCMR's recommendations.

40.  Specifically, the Director, AFRBA, directed that Plaintiff's record be corrected to

show that:

A.  His DD Form 785, *Record of Disenrollment from Officer Candidate School –*
   *Type Training*, dated 2 April 2009, be and hereby is, removed from his record.

B.  He was not disenrolled from Air Force Officer Training Corps on 2 April 2009,
   but was continued in that program; that his Source of Commission is (AFROTC)
   and that any and all recoupment action associated with his disenrollment be
   stopped.

C.  Appropriate action be taken to effect his commission and promotion.

41.  On or about May 3, 2012, an Air Force member attempted to contact Plaintiff.

When Plaintiff's father returned the call, he was informed that all the relief directed by the

Director, AFRBA was contingent upon Plaintiff returning to active duty.

42.     In a letter dated May 7, 2013, Plaintiff's counsel wrote to the AFBCMR requesting clarification of the AFBCMR's position on the awarded relief.  Counsel further informed the AFBCMR that Plaintiff did not wish to return to active duty.  Counsel noted that it had been three years since Plaintiff had been disenrolled and since that time he had secured gainful employment with a civilian employer who was funding his graduate education and forcing him to abandon his graduate education would be unjust.

43.     Counsel further highlighted the significant logistical issues of returning Plaintiff to active duty and the disadvantage that would place Plaintiff in.

44.     On May 15, 2012, the AFBCMR responded to counsel's letter and confirmed that "it is indeed the Board's position that your client has to return to active duty to benefit from the correction directed to his record.  Additionally, as a point of clarification, that service would start from the date of Secretary of Defense appointment, without constructive service credit as you indicate in your letter."  The letter further advised that if Plaintiff desired reconsideration of his application to change the relief already granted, such reconsideration request "may result in a less favorable outcome."

45.     On July 13, 2012, counsel wrote to the AFBCMR requesting that all recoupment efforts be stopped, his debt be cancelled, all negative references to his disenrollment be removed from his file and that he receive an honorable discharge.

46.     Counsel further argued that the request need not be treated as a reconsideration, arguing that the nature of the remedy Plaintiff was entitled to implicates the Board's duty to grant thorough and fitting relief with respect to the initial application and favorable decision. Nonetheless, counsel asserted that should the Board treat the letter as a formal reconsideration,

the core finding that Plaintiff should not have been disenrolled should remain undisturbed.

47.     On May 16, 2013, the AFBCMR issued a decision, treating the request as a

formal reconsideration.  The Board determined that there was insufficient evidence of error or

injustice to warrant corrective action.

48.     In justifying its denial, the AFBCMR made a number of conclusions.  In pertinent

part, the Board concluded that Plaintiff had

> benefitted from the AFROTC program by receiving a 4-year degree at taxpayer's
> [sic] expense, was successful in getting his disenrollment overturned and
> recoupment action ceased through the records correction process and is now
> unwilling to return to active duty to fulfill his obligation. . . . We find it
> incongruous the applicant would actually expect to benefit from the program and
> not expect to either repay his commitment through military service or repayment
> of the debt; especially considering the AFROTC contract he signed clearly
> indicated that if disenrolled, the decision to call him to active duty, pursue
> recoupment of monies expended on his education, or release him from his
> obligations would be the sole discretion of the Commander, AFROTC.  In the
> applicant's case, there has been no showing the Commander, AFROTC abused his
> discretionary authority and therefore, he must either serve on active duty to fulfill
> his military service obligation or pay the debt incurred as a result of his
> disenrollment.  In view of this and in the absence of evidence the applicant was
> treated differently from others similarly situated, we find no basis to recommend
> granting the relief sought.

## STATUTORY AND REGULATORY FRAMEWORK

49.     10 U.S.C. § 1552 provides for the correction of errors or removal of injustices in

the records of a current or former member of the military.  Upon timely application and

consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when
> the Secretary considers it necessary to correct an error or remove an injustice.
> Except as provided in paragraph (2), such corrections shall be made by the
> Secretary acting through boards of civilians of the executive part of the military
> department.

10 U.S.C. § 1552(a)(1).

50.     The AFBCMR is established by the Secretary of the Army, and consists of

Department of the Air Force civilians who are appointed by the Secretary of the Air Force. Three members constitute a quorum.  32 C.F.R. § 865.1.  The AFBCMR is charged with the responsibility of reviewing all matters that are properly before it to determine the existence of error or injustice.  32 C.F.R. § 865.2(a).

51.     Once an injustice is found, correction boards have an abiding moral sanction to take steps to grant thorough and fitting relief.  The Board has significant power to grant relief and may, for instance, order reinstatement and back pay.  *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (Board is empowered under 10 U.S.C. § 1552 to order retroactive pay and promotion); 10 U.S.C. § 1552 (the Secretary of the Army, acting through a Board of Corrections, is empowered to pay claims for lost pay, allowances, and other compensation as the result of a record correction.)

52.     The district court reviews the findings of a military correction board to determine whether the action

## LEGAL CLAIMS

### Count I

**The AFBCMR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law.**

53.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

54.     The AFBCMR's actions are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law.

55.      In its initial final decision and again upon reconsideration, the Board failed to grant thorough, fitting and appropriate relief after finding that Plaintiff suffered an error and injustice with respect to being disenrolled from the AFROTC.

56.     The AFBCMR acted arbitrarily and capriciously by making the correction of disenrollment records and the cessation of recoupment efforts contingent upon acceptance of active duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A)  Enter judgment in favor of Plaintiff on all counts;

B)  Remand the case back to the AFBCMR for further action consistent with the Court's findings, decision, and order;

C)  Upon proper application, award Plaintiff attorneys' fees in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412); and

D)  Award such other relief as the court deems appropriate.

Dated November 25, 2013.

Respectfully submitted,


___/s/ David P. Sheldon_____
David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, D.C.  20003
Tel: 202.546.9575
Fax: 202.546.0135

Attorney for Plaintiff