UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER M. MAUNZ,

    Plaintiff,

    v.

DEBORAH LEE JAMES, Secretary of the Air Force,

    Defendant.

Civil Action No. 13-1858 (JDB)

## MEMORANDUM OPINION

Plaintiff Christopher Maunz does not want to be in the Air Force. But he also does not want to reimburse the government the $27,000 (and change) in tuition, books, and other benefits the Air Force gave Maunz while he was a Reserve Officer Training Corps ("ROTC") cadet at James Madison University. A Department of the Air Force review board concluded that Maunz must choose one or the other—either serve as an Air Force officer or repay the money—a decision that Maunz believes was contrary to law. The parties have filed cross-motions for summary judgment,[1] and, for the reasons explained below, the Court will grant the Air Force's motion and deny Maunz's motion.

## BACKGROUND

Maunz was a typical, if underperforming, Air Force ROTC cadet until April 2, 2009, when his commander "[d]isenrolled" him from the program. Att. 2 to J.A. [ECF No. 14-2] ("Att. 2") at 8; see also Att. 1 to J.A. [ECF No. 14-1] ("Att. 1") at 47 ("Cadet Maunz . . . has consistently ranked near the bottom of his [ROTC] class since entering the program."). The

---

[1] Gov't's Mot. for Summ. J. [ECF No. 4] ("Gov't's Mot."); Pl.'s Cross-Mot. for Summ. J. and Opp'n to Gov't's Mot. [ECF No. 7-1] ("Pl.'s Cross-Mot."); Gov't's Opp'n to Pl.'s Cross-Mot. and Reply [ECF No. 10] ("Gov't's Opp'n"); Pl.'s Reply to Gov't's Opp'n [ECF No. 13] ("Pl.'s Reply").

form memorializing Maunz's disenrollment explains that he was dropped for "failure to maintain military retention standards." Att. 2 at 8.

What, specifically, did Maunz do wrong? The Air Force ROTC manual requires cadets to "report all . . . civil involvements [that is, run-ins with the law] to the detachment within 72 hours," Att. 1 at 18 (quoting Air Force ROTC Instruction 36-2011 ¶ 1.5.2.3), and Maunz failed to heed this requirement. North Carolina police had arrested Maunz in 2008 for, among other things, speeding, possession of marijuana, and possession of drug paraphernalia. See id. at 32–33. Rather than immediately report this incident, however, Maunz—acting on the advice of his father, a retired Air Force colonel—waited some fifty days before explaining his predicament in a letter to his detachment commander. See id. at 33, 36. Apparently, Maunz (and his father) thought it best to report these allegations only after he had cleared his name—which he did with some success. See id. at 33. In December 2008, North Carolina prosecutors elected to drop Maunz's marijuana and paraphernalia charges and reduce his traffic charges in exchange for community service. Id. But this development changed nothing for Maunz's ROTC superiors, who felt that "his failure to comply with [the 72-hour reporting] policy [was] a serious breach of trust" that deserved dismissal from the program. Id. at 47. After his dismissal, the Air Force notified Maunz that he was required to repay the government $27,746, which represented the sum total of his ROTC scholarship. Att. 2 at 10–11.

Maunz appealed the ROTC's decision in August 2010, submitting an application to the Air Force Board for Correction of Military Records. See Att. 1 at 14. The Board consists of civilians (appointed by the Secretary of the Air Force), who will "[i]n appropriate cases, . . . direct[] correction of military records to remove an error or injustice." 32 C.F.R. §§ 865.1, 865.2; see also 10 U.S.C. § 1552 (authorizing correction of military records by civilian boards).

2

Maunz claimed just such an error or injustice, arguing that his ROTC chain of command had treated him far too harshly—he had voluntarily reported his arrest, after all, and he meant well when he delayed his report. And he asked the Board to "reinstate him into the Air Force ROTC program and the Air Force Reserve, stop the recoupment of his scholarship funds and grant relief for cause." Att. 1 at 23. "By granting the relief requested," Maunz's counsel wrote, "[the] Board will allow a dedicated and highly competent cadet to continue to pursue becoming an officer in the Air Force and provide sound leadership to the service." Id. at 29.

The Board agreed with Maunz. In a December 2011 opinion, it found that the 72-hour rule was not as unambiguous as it seemed, that Maunz eventually (and voluntarily) reported his arrest, and that this was Maunz's first disciplinary incident. See Att. 1 at 10. The Board therefore decided that Maunz "ha[d] established reasonable doubt as to whether his actions warrant[ed] disenrollment," and it "elect[ed] to resolve such doubt in [his] favor." Id. Moreover, the Board recommended that Maunz get all the relief he requested: first, the document finalizing his disenrollment from ROTC should "be removed from his record"; second, the Air Force should stop "any and all recoupment action associated with his disenrollment"; and third, the Air Force should take "[a]ppropriate actions . . . to effect his commission and promotion." Id. at 11.

Maunz, in short, had won. But his next steps would not show it. His attorney wrote a letter to the Board in May 2012, asking whether "Maunz is required to return to active duty in order to benefit from the [Board's] recommendations." Att. 3 to J.A. [ECF No. 14-3] ("Att. 3") at 29–30. "Mr. Maunz does not wish to return to active duty," the attorney explained, because he "has secured gainful employment with a civilian employer who is currently funding [his] graduate school education." Id. at 30. The Board replied with bad news. Maunz was, indeed,

3

required to return to the Air Force, but (if he wanted "to change the relief already granted") he could ask the Board to reconsider his application—although reconsideration "may result in a less favorable outcome." Id. at 32. Undeterred, Maunz asked the Board to take another look at his case in July 2012. His latest request: "that all recoupment efforts be permanently stopped, his debt be cancelled, and all negative references to his disenrollment be removed from his file, and that he receive an honorable discharge." Id. at 37.

Maunz did not win this second time around. "After thoroughly reviewing the documentation submitted in support of [Maunz's] appeal," the Board wrote, "we do not believe further corrective action is warranted." Id. at 34. As the Board saw things, Maunz had gotten everything he wanted out of his first appeal. The Board had "overturn[ed] his disenrollment in order to allow him to enter the Air Force as an officer," and it had cancelled the recoupment action against him—and neither of these actions constituted an "error or injustice." Id. at 35. The Board thus held that Maunz "must either serve on active duty . . . or pay the debt incurred as a result of his disenrollment." Id.; see also id. ("[S]ince [Maunz] no longer desires to become a commissioned officer . . . , we would entertain his request to void the Board's directive, which will return his records to [their] original state, i.e., disenrolled with recoupment.").

This complaint followed. Although Maunz initially suggested that he was challenging both the Board's initial decision (granting him relief) and its decision on reconsideration (denying any additional relief) as "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law," Compl. [ECF No. 1] at 9, his briefings before this Court have substantially narrowed the scope of his claim. Rather than challenge both decisions, Maunz only "seeks to review . . . [the Board's] 2013 reconsideration decision." Pl.'s Cross-Mot. at 15; see also id. ("Plaintiff does not directly seek review of the . . . 2011 decision but submits

4

that it remains pertinent to the Court's . . . review of the . . . 2013 reconsideration decision."). As Maunz explains, the question in this case boils down to whether the Board met "its obligation to grant [him] full and effective and thorough and fitting relief in accordance with binding regulation and federal law." Id. at 22 (internal quotation marks omitted).

## STANDARD OF REVIEW

In the ordinary summary-judgment case, courts will grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But this is no ordinary summary-judgment case. It is, instead, a case involving review of a final agency action under the Administrative Procedures Act, 5 U.S.C. § 701 et seq.—which further limits the courts' power of review beyond the usual Rule 56(a) standard. Under the APA, it is the agency's job to resolve factual issues and arrive at a decision that is supported by the administrative record; the district court, meanwhile, need only "determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Occidental Eng'g Co. v. INS, 753 F.2d 766, 769–70 (9th Cir. 1985). Thus, in this instance, summary judgment serves as the mechanism for deciding, as a matter of law, whether the Air Force Board for Correction of Military Records reached a decision that is supported by the administrative record and otherwise consistent with the APA standard of review. See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

And that standard of review is not an onerous one. According to the APA, a court may vacate an agency decision only if it is (among other things) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory . . . authority, id. § 706(2)(C), "without observance of procedure required by law," id.

5

§ 706(2)(D), or "unsupported by substantial evidence," id. § 706(2)(E). Agency actions under this statute are entitled to significant deference, and the scope of review is narrow. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). The reviewing court, indeed, is not permitted "to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). That is to say, it is not enough to conclude that the Board's decision was incorrect—as long as the agency decision has some rational basis, the court is bound to uphold it. See Overton Park, 401 U.S. at 416 (explaining that the court may only review agency action to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment").

Moreover, the standard of review is "unusually deferential" in APA cases involving the correction of Air Force military records. Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989); see also Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002) (applying the "unusually deferential" standard to an Army military-records decision). As this Circuit has explained, "the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute . . . constrains agency action." Kreis, 866 F.2d at 1514. And here, the statute gives broad discretion to the Air Force: "The Secretary of a military department may correct any military record," the statute says, "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). Thus, the Air Force Secretary may (or may not) correct an applicant's military record as she sees fit, regardless of the Board's error-or-injustice finding. See Kreis, 866 F.2d at 1514. Congress, in other words, has imposed few constraints on Air Force action, which suggests that courts should overturn "only the most egregious [military-records] decisions."[2] Id. at 1515.

---

[2] Maunz takes issue with this "unusually deferential" standard of review, arguing that it should not apply to his case. See Pl.'s Cross-Mot. at 14–15 (citing Remmie v. Mabus, 898 F. Supp. 2d 108, 119 (D.D.C. 2012)). But

## DISCUSSION

The question at issue in this case is a narrow one. Did the Board violate the APA (keeping in mind the "unusually deferential" standard applicable to military-records cases) when it decided in 2013 that Maunz had not suffered an error or injustice that warranted additional correction of his Air Force records? See Pl.'s Cross-Mot at 15 (disclaiming any direct challenge to the Board's 2011 decision). And Maunz has gone further still to sharpen the focus of this Court's review: he "does not allege that the [Board] failed to consider any nonfrivolous arguments or an important aspect of [Maunz's] problem"; he does not "argue that the decision was unsupported by the record"; he "has not alleged that the [Board's] 2013 decision misinterpreted a law or contained unsupported factual findings"; and he "does not dispute that the [Board] reviewed the evidence and was 'completely aware' of [Maunz's] circumstances." Id. at 22–24. Maunz, instead, argues only that the Board "acted contrary to law in violation of the APA and [the Board's] statutory mandate" when it failed to "gran[t] 'full and effective' relief [as] mandated by 32 C.F.R. § [8]65.4(h)(4)."[3] Id. at 24.

This Court cannot agree. The relevant regulation is clear: "The Board will make determinations on . . . [w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief." 32 C.F.R. § 865.4(h).

---

Remmie does not support Maunz's conclusion. There, the district court noted that not every military-review-board case is entitled to "unusual[]" deference, because some cases merely involve "review of the Board's application of a procedural regulation governing its case adjudication process," and such actions remain subject to the usual (but still deferential) APA standards. 898 F. Supp. 2d at 118 (emphasis added and internal quotation marks omitted). But this is not that kind of case. Far from challenging the Board's decision-making "process" or "procedur[es]," Maunz challenges the merits of the Board's decision—whether he suffered an error or injustice, and what relief (if any) the Board should give. See Pl.'s Cross-Mot. at 22–24. This case therefore fits the Kreis mold, where the appellant "challenge[d] the corrective relief recommended by the Air Force Board for the Correction of Military Records," and where the unusually deferential, egregious-decision standard governs. Kreis, 866 F.2d at 1509, 1515.

[3] In their initial briefs, both Maunz and the government place the relevant regulations at 32 C.F.R. § 365.4(h)(4). But Maunz later clarified that "[t]he correct citation is 32 C.F.R. § 865.4(h)(4)." Pl.'s Reply at 2 n.2.

And the Board's 2013 reconsideration decision followed this regulation to a tee. It considered the facts of Maunz's case, including the various developments that post-dated its initial 2011 decision. See Att. 3 at 34–35. It determined that "the facts and circumstances of [Maunz's] case in no way render him the victim of an error or an injustice." Id. at 35. And it therefore concluded that no "further corrective action is warranted." Id. at 34. In sum, the Board exercised its regulation-granted power to decide that Maunz had not been wronged in any material way, and it thus opted against any further record corrections. There is nothing contrary to law—and certainly nothing egregious—about this chain of events.

Maunz, of course, disagrees. First, he argues that the Board was obligated to grant him additional relief, because it had already found "an error or injustice in [his] record." Pl.'s Cross-Mot. at 24. As this argument goes, because the Board discovered an injustice in Maunz's first appeal, it was duty-bound to give him relief in response to his second. But this is mere bootstrapping. To be sure, the Board concluded in 2011 that Maunz should not have been dropped from the Air Force ROTC program, that the ROTC commander's decision was a fixable error or injustice, and that Maunz ought to get all the relief he asked for. But this line of thinking says nothing about the Board's 2013 deliberations, in which the civilian panel was obliged to decide (1) whether the 2011 decision (and subsequent developments in Maunz's personal life) subjected him to some additional error or injustice, and if so, (2) what corrective action it ought to take. Maunz lost his reconsideration appeal at step one, and there was therefore no need to move on to step two. Indeed, given the Board's no-error-or-injustice finding, there is a strong argument that the Board would have contravened the governing law if it had granted Maunz additional relief. See 32 C.F.R. § 865.4(h)(4) (allowing the Board to correct records only after it finds an "error or injustice that can be remedied effectively").

Maunz persists that the Board's decision must be contrary to law, because the civilian panel's 2011 recommendations—if left unchanged—would put him in a worse position than when he started. He would, he explains, have to leave his civilian job and graduate-school studies, and he would enter the Air Force officer corps more than a few steps behind his peers. See Pl.'s Cross-Mot. at 18. As Maunz sees things, this must be contrary to law because the Board "'can only exercise its discretion for the benefit of the individual [military service] member.'" Id. (quoting Wolfe v. Marsh, 835 F.2d 354, 357–58 (D.C. Cir. 1987)). But to acknowledge that the Board must operate within certain bounds (it cannot, for example, retroactively modify Maunz's military records to deprive him of additional pay or rank, see Doyle v. United States, 599 F.2d 984, 1000 (Ct. Cl. 1979), amended sub nom. In re Doyle, 609 F.2d 990 (Ct. Cl. 1979)), is not to say that the Board's discretion is hostage to Maunz's subjective—and evolving—preferences for corrective action. Far from it. It remains the Board's purview to choose an appropriate remedy when faced with an error or injustice. See 32 C.F.R. § 865.4(h) ("The Board will make determinations on . . . what corrections are needed to provide full and effective relief."). And in 2011 it did just that, giving Maunz everything he asked for. Surely Maunz knew when he first filed his appeal with the Board in August 2010—more than sixteen months after his ROTC disenrollment—that reinstatement for military service might ultimately prove inconvenient. See Att. 1 at 14. Yet that is what he sought. Just because he—years later—wishes he had asked for something else does not make the Board's 2013 reconsideration decision contrary to law.[4]

---

[4] Maunz's reliance on Wolfe is misguided for another reason. The Board's 2013 decision—the only decision on review here—was a decision not to "exercise its discretion" to modify Maunz's military records. In other words, the Board found no error, and it therefore opted not to correct Maunz's records. This is not the kind of case contemplated by Wolfe, which only purports to limit how a military-review board corrects service members' records—not whether a board should correct those records in the first place. See Wolfe, 835 F.2d at 357–58 ("Although this power [to correct any military record] is a discretionary one, the Correction Board is not without guidance. The . . . Board can only exercise its discretion for the benefit of the individual member."); see also Doyle,

Maunz argues, next, that the Board's decision to require military service as a condition of its debt-reduction relief is contrary to law because a previous panel considering a different case came out the other way. Pl.'s Cross-Mot. at 19–20. But the Board decides each case "on the evidence of the record," 32 C.F.R. § 865.2(c), and it is the service member's burden to "provid[e] sufficient evidence of material error or injustice" to justify his claim for relief, id. § 865.4(a). It is therefore unsurprising that different cases with different evidentiary records will sometimes come out differently. Moreover, while the Board "is by no means required to distinguish every precedent cited . . . by an aggrieved party," LeMoyne–Owen Coll. v. NLRB, 357 F.3d 55, 60 (D.C. Cir. 2004), it is apparent that Maunz's newly discovered[5] case differs in material ways from the present appeal. There, the Board granted relief (that is, no debt repayment and no continuing military service obligation) to a former Air Force ROTC cadet who struggled academically due to multiple sclerosis. See Ex. C to Pl.'s Cross-Mot. [ECF No. 7-4] at 6. In light of these circumstances, the Board deemed "the [cadet's] disenrollment . . . beyond his control." Id. That is not this case, where disenrollment was based on intentional conduct and Maunz remains perfectly capable of serving in the Air Force—he would just prefer not to. The Court therefore finds nothing contrary to law about the disparate outcomes for these two wrongly dismissed cadets.

Finally, Maunz contends that his proposed corrections—"removal of all negative references to his disenrollment from his file and stoppage of all recoupment efforts without mandating his return to active duty"—would constitute better, more "fitting relief under the

---

599 F.2d at 1000 ("It is clear that the statute only confers on the Secretary the power to correct records in favor of a serviceman and never against him."). Wolfe therefore has little persuasive force here.

[5] The Court notes that Maunz did not bring this case to the Board's attention as part of his 2011 or 2013 appeal, and thus there is no basis for concluding (and, indeed, Maunz does not argue) that the Board acted arbitrary or capriciously by disregarding relevant precedent raised by either party. See LeMoyne–Owen Coll., 357 F.3d at 61 ("[W]here . . . a party makes a significant showing that analogous cases have been decided differently, the agency must do more than simply ignore that argument.").

circumstances of this case." Pl.'s Cross-Mot. at 21.  Maybe so.  But that is not for this Court to decide.  This Court, after all, cannot "substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.  And this is especially true in military-records cases, where judicial second-guessing runs the risk of creating "a forum for appeals by every soldier dissatisfied with [a personnel action], a result that would destabilize military command and take the judiciary far afield of its area of competence."  Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000); see also Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").  Sticking to the judiciary's area of expertise, and mindful of the "unusually deferential" standard of review applicable here, this Court can only conclude that the Board's 2013 decision was a reasonable one—and certainly was not (egregiously) arbitrary, capricious, or contrary to law.

## CONCLUSION

The Court will therefore grant the government's motion for summary judgment in this case and deny Maunz's cross-motion.  A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: January 12, 2015